## HAMILTON WOOLLEN COMPANY *vs.* JOHN Z. GOODRICH & another.

In an action to recover the price of goods sold by an agent, in which one ground of defence is that the goods were sold with an express agreement, assented to by the principal, that the purchaser should only be responsible to the agent, with whom a settlement for them has been made, if the agent in his testimony has denied that such a settlement has been made, he may be contradicted by showing that in letters written by him he has made different statements.

If a settlement has been made of large accounts, without reference to books or careful reckoning of items, but founded upon a statement by one of the parties of the amount of the balance of a certain account as shown upon his ledger, after giving all credits properly applicable thereto, and it afterwards appears that a comparatively small item of credit had not been entered upon the ledger, still, if the parties in making the settlement did not intend to ascertain the precise result of the account between them, and each of them agreed to waive all claims against the other which were not included in the balance arrived at, and the statement as to the balance of the account upon the ledger was made in good faith, and does not appear to have been relied upon by the other party, and the error does not appear to have been material, the settlement should be upheld.

If there is a conflict in the oral testimony of the parties to an action, in respect to an alleged settlement between them, it is proper for the presiding judge to advise the jury to examine carefully the several written instruments which have been produced as having been executed at the settlement, and to consider which theory is most consistent with them; and the verdict of the jury finding that such settlement was made will not be set aside because in so advising them the judge omitted to instruct them specially that they must first be satisfied of the authority of the agent by whom the settlement was finally agreed to on the part of one of the parties, if his attention was not called to the matter, and if the question of the authority of the agent was fully discussed in other parts of the case.

If the verdict of a jury covers the whole issue submitted to them, no exception lies to the refusal of the presiding judge to inquire of them as to their finding upon a particular question which arose during the trial, where such refusal does not involve a violation of any rule of law, or of established practice.

CONTRACT brought to recover the price of a bill of wool alleged to have been sold by the plaintiffs to the defendants, amounting to $10,828.61.

At the trial in this court, before the chief justice, the defence was put upon two grounds : 1. That the defendants purchased the wool of Ripley & Cameron, merchants and factors, doing business in the city of New York, and that Ripley & Cameron, though acting as agents of the plaintiffs, sold the wool in question to the defendants under an express agreement, assented to by the plaintiffs, that the defendants should be liable exclusively to them therefor, and not to the plaintiffs ; and that they had paid Ripley & Cameron in full for the same. 2. That in February 1855, and after the purchase of the wool, a settlement was had between the plaintiffs, the defendants, and Ripley & Cameron, at which the plaintiffs waived any claim which they might have had against the defendants on account of the wool, and assented to a settlement between the defendants and Ripley & Cameron, in which, after giving to the latter credit for the wool, a large balance was found due to the defendants.

Upon the first ground of defence, the defendants introduced the deposition of said Ripley ; to contradict which, the defendants were allowed, under objection, to read in evidence two letters written by him. The facts material to the question thus raised are sufficiently stated in the opinion.

Upon the second ground of defence, the defendants introduced evidence, consisting chiefly of the testimony of John Z. Goodrich, one of the defendants, and of the papers testified to by him as having been executed at said alleged settlement, tending to prove that upon the failure of Ripley & Cameron, in February 1855, the plaintiffs, by John R. Brewer, their treasurer and agent, and J. P. Stedman, their agent, the defendants, by John Z. Goodrich, and Ripley & Cameron, met at New York for the purpose of effecting a settlement ; that, at the first interview, Brewer claimed that the defendants were liable to the plaintiffs

for the wool in question; that this claim was resisted by Good-rich, who contended that his firm had dealt exclusively with Ripley & Cameron for the wool, and had paid them therefor; that finally Brewer waived all claim against the defendants on account of the wool, and assented to a settlement on the basis that the defendants were debtors to Ripley & Cameron exclusively, and not to the plaintiffs, for the wool; that thereupon a settlement took place between the defendants and Ripley & Cameron; that it was agreed that they should settle according to the balance as shown by the ledger of the defendants; that this was intended and agreed to be a joint settlement, each party agreeing to waive any claims they might have against the other, not included in the balance as shown by the defendants' ledger; and that it was intended and agreed to be a final settlement of all matters between them, including the wool sold to the defendants by Ripley & Cameron for or on account of the plaintiffs; that no examination of the books of either party took place, and that the books of the defendants were not present, but that, according to the balance as taken from and shown upon their ledger, there was upon said settlement a balance due to the defendants of $16,617.04; that there was a credit upon their books to Ripley & Cameron of all the wool except the last item of seven bales, hereinafter referred to; that there were drafts to the amount of about $57,000, which had been drawn by the defendants and accepted by Ripley & Cameron, of which $15,286.15 were then held by the plaintiffs; that it was agreed that the defendants were to assume and pay all these drafts, including those held by the plaintiffs; that it was agreed that Ripley & Cameron should pay, and that they did pay, the balance of $16,617.04 due from them by delivering certain securities to the defendants, which the defendants should apply to the payment of their drafts held by the plaintiffs, which was accordingly done; that Ripley & Cameron insisted, as a condition to their settlement and to the turning out of the security aforesaid, that the plaintiffs, upon receiving the same, according to the arrangement aforesaid, should release them, the said Ripley & Cameron, from all further liability on account of the wool sold to the defendants; and that the

plaintiffs were anxious for a settlement upon these terms, because they were apprehensive that the failure of Ripley & Cameron would involve the ruin of the defendants, and that it was only by the security aforesaid that they could realize anything on said drafts; that they preferred to rely upon said securities, rather than upon the responsibility of the defendants; that a settlement upon the terms aforesaid was assented to by all parties, and was carried into effect; that, before the papers were finally executed, Brewer was obliged to leave for Boston, and the same were executed by Stedman in his behalf; and that the defendants had taken up or provided for all said drafts, amounting to about $57,000, as aforesaid.

The plaintiffs, on the contrary, contended, and offered evidence tending to prove that they were not parties to the alleged settlement; that they never waived any claim upon the defendants for the wool, but, on the contrary, insisted upon the same; that the only settlement which they made, or to which they assented, was for the payment of the drafts held by them, and not for the wool now in suit; that they were not parties to, did not assent to, nor did they know the terms of the alleged settlement between the defendants and Ripley & Cameron; and that Stedman, in signing a release of their claim for said wool, exceeded his authority. They also contended, and offered evidence tending, as they claimed, to prove that the alleged settlement between Ripley & Cameron and the defendants did not include the wool in suit, but was exclusive of the same.

It was admitted that the last item in the plaintiffs' declaration, viz: "July 21, 1854, 7 bales fleece sorts, $293.50," was not credited to Ripley & Cameron on the books of the defendants at the time of the alleged settlement; that said seven bales were originally sent as samples; that no bill had been forwarded with them; and that, for this reason, they had been accidentally omitted to be credited on the defendants' books.

The plaintiffs contended that, as no credit of the seven bales was on the ledger of the defendants at the time of the alleged settlement, the defendants were now liable to them for the price thereof; and requested the court to instruct the jury accordingly.

The chief justice declined so to do, but did instruct them that if they should be satisfied, upon the evidence, that a settlement had been made in the manner and upon the terms and understanding claimed by the defendants, and hereinbefore set forth; that this, in the language of the parties, was a "jump settlement," in which the parties agreed to waive, and did waive, any and all claims which either might have against the other not included in the balance, as shown by the defendants' ledger; and that the plaintiffs were a party assenting to the same; then the plaintiffs would not be entitled to recover of the defendants the price of the seven bales; but if the jury were not thus satisfied, that then the plaintiffs would be entitled to recover for the seven bales.

The chief justice submitted the question of a settlement to the jury under instructions that, upon this point, it was incumbent on the defendants to satisfy the jury that a settlement had taken place between the plaintiffs, Ripley & Cameron, and themselves, as contended for by them, and that this settlement included the wool in controversy in this suit; that if it was agreed that the balance, as shown by the defendants' ledger, should be assumed as the basis of settlement, and if the ledger did contain a credit for all of the wool except the seven bales, as represented by them; and if it was further agreed that this should be a "jump settlement," the parties thereby meaning that they had not ascertained a precise result, and each agreeing to waive any claims existing against the other not included in said balance; and if the terms of the settlement had been performed by the defendants on their part; then such settlement would constitute a good defence to the plaintiffs' claim for the wool in suit, and they could not recover of the defendants therefor.

Upon the conclusion of the charge to the jury the plaintiffs' counsel requested the court to instruct the jury that if the defendant John Z. Goodrich, during the negotiations for a settlement, represented to the plaintiffs, or to their agent Brewer, that the defendants had paid for the wool to Ripley & Cameron, the settlement would be void as against them, and would constitute no defence to this action, if the wool had not in fact been paid

for in full by the defendants to Ripley & Cameron, owing to certain alleged errors and omissions in the defendants' books, although Goodrich made such statement in good faith, and with the belief that the wool had been paid for in full.

As to this the chief justice remarked to the jury that the instruction asked for was substantially covered by the charge already given; and further instructed them that it was contended by the defendants, on the one hand, that the wool in suit was included in the alleged settlement, and had been paid for by them; that it was contended by the plaintiffs, on the other hand, that the wool was excluded from the settlement, and had not been paid for; that, in order to find for the defendants, the jury must be satisfied that it was included; that if it was included, and if, as further contended, this was a "jump settlement," as before explained, then the settlement would be conclusive, although errors or omissions might subsequently be found in the books of the respective parties, which had been expressly waived. He also instructed the jury that if Goodrich, to induce the plaintiffs to make the settlement, had made any false statement or representation, knowing it to be so or not believing it to be true, the settlement, if any had taken place, would be avoided thereby, and not binding on the plaintiffs.

Certain other matters respecting which questions arose are stated in the opinion.

The jury returned a verdict for the defendants, and the plaintiffs alleged exceptions.

*C. B. Goodrich & J. D. Ball,* for the plaintiffs. 1. The letters of Ripley were inadmissible. They contradicted no statement in his deposition. It does not appear that they related to any subject respecting which he testified. The letters to which they were in reply were not produced. 2. If, as the plaintiffs contended, Goodrich made an unqualified affirmation of a fact, with a view to induce a settlement, and the representation proved false, the plaintiffs, having acted upon it, have a right to avoid the settlement. *Stone* v. *Denny,* 4 Met. 151, 162, and cases cited. This principle is especially applicable to an affirmation of a fact peculiarly within his own knowledge. 3. The

defendants are liable for the price of the seven bales which were omitted. 4. The question proposed by the plaintiffs should have been put to the jury. 5. The tendency of that portion of the charge respecting the consideration due to the papers executed at the alleged settlement was to make the jury believe that the question of Stedman's authority was not open to them.

*E. Merwin,* for the defendants.

MERRICK, J. 1. The first question presented in the bill of exceptions relates to the admissibility of the letters of Ripley which were produced and offered in evidence by the defendants. It appears from the facts reported that the wool for the price of which this action is brought formerly belonged to the plaintiffs, and that it was sold by their agents, Ripley & Cameron, to the defendants. It was contended by the latter that the wool was sold to them upon an express agreement and arrangement, which was assented to by the plaintiffs, that they should be liable exclusively to Ripley & Cameron, and not to the plaintiffs. And it was further contended by them that they had subsequently made a full settlement for the wool with Ripley & Cameron, and paid them therefor, and that this was known and expressly assented to by the plaintiffs, who thereupon and in consideration thereof waived any claim which they might otherwise have had upon the defendants for the price of the wool, and agreed to rely solely upon the responsibility of Ripley & Cameron therefor. And the defendants having introduced evidence tending to show that such settlement was made, and particularly that the price of seven bales of "fleece sorts," one of the items charged in the account, was included in and paid for in said settlement, the plaintiffs produced in reply and read in evidence the deposition of said Ripley, for the purpose of proving that no such settlement or payment had been made. And his testimony in his deposition was substantially to that effect. It was to contradict his statements in this particular that the letters referred to were produced and offered in evidence by the defendants. In his letter of the 27th of February, after alluding to the negotiation which resulted in a settlement, he says: " When we handed over the securities to you, and you

had arranged with Mr. Brewer, I supposed it was all settled, without knowing the detail of the arrangement with him. I did not suppose that there was a loophole through which it could be opened again." And in his subsequent letter of the 8th of March he says, among other things not material to be adverted to, that "the difficulty with me is, that at the time of the settlement, without entering into the discussion as to the detail of the arrangement, I was anxious to have the settlement made upon the basis proposed; which was to take the securities we offered and settle the whole affair with all parties." These statements appear to be variant from, if not in direct conflict with, those contained in his deposition; and therefore the letters were admissible on the part of the defendants for the purpose of contradicting his testimony, and thereby impairing his credit with the jury. It was within the province of the jury to consider and pass upon these apparently conflicting statements, and to give to the whole evidence the effect to which it was justly entitled. The letters being competent for the purpose for which they were offered, the ruling of the court admitting them in evidence was correct.

2. In the course of the trial it appeared that a settlement was in fact made between the defendants and Ripley & Cameron; that it was made upon the basis of a balance due to the former, of the sum of $16,617.04, as shown upon the books of the defendants, which were not then present; that it was what they called a "jump settlement," in which "the parties agreed to waive and did waive any and all claims which either might have upon the other, not included in the balance as shown by the defendants' ledger." From the evidence produced concerning this settlement, it appeared that, at the time when it was made, Goodrich, one of the defendants, erroneously stated that the said item in the account for said "7 bales of fleece sorts" was entered upon their ledger and made a part of the account from which the balance apparently due to them resulted. The court instructed the jury that "if Goodrich, to induce the plaintiffs to make said settlement, had made any false statement or representation knowing it to be so, or not believing it to be true, the

settlement would be avoided thereby, and not binding on the plaintiffs." But the plaintiffs requested the court further to instruct the jury that if Goodrich, " during the negotiations for a settlement, represented to the plaintiffs or to their agent, Brewer, that the defendants had paid for the wool to Ripley & Cameron, the settlement would be void as against them, and would constitute no defence to this action, if the wool had not in fact been paid for in full by the defendants to Ripley & Cameron, owing to certain alleged errors and omissions in the defendants' books, although Goodrich made such statement in good faith, and with the belief that the wool had been paid for in full." To the request for this instruction the court, in the peculiar circumstances of the case, rightly declined to accede. The plaintiffs did not assert or suggest that they in giving their assent to the settlement in any degree relied upon or were influenced by this statement of Goodrich, and they did not ask for the instructions upon the ground that their judgment or course of action was at all affected by it, or that but for the occurrence of the erroneous statement they would not have acceded and assented to the settlement. If they placed no reliance upon it, an unintentional error of statement in relation to a comparatively inconsiderable item in the account was an immaterial circumstance, which, as it did not in any degree induce, should not justly and cannot legally affect the settlement which was finally made with Ripley & Cameron to the mutual satisfaction of the parties. *Edwards v. Marcy*, 2 Allen, 489. It was well known to the agents of the plaintiffs that, for considerations perfectly satisfactory to themselves, the parties did not propose to predicate their settlement upon a thorough examination and an exact statement of all the items of the account between them, but intended to adopt a basis which they believed would be in the main just and right, and to waive and release all accidental errors which might occur in the course of the settlement. With this purpose and intent on both sides, a settlement fairly and deliberately made and concluded is justly to be held binding upon the parties, and upon all others who, being fully advised of all the facts concerning it, gave to it their assent, and acted upon it. It is impossible,

therefore, to find that the plaintiffs have any just cause of exception to the refusal of the court to instruct the jury in conformity to their request.

3. In submitting to the jury the determination of the question whether such a settlement as that which the defendants contended had been made had in fact been concluded between them and Ripley & Cameron, with the assent of the plaintiffs, the presiding judge did not, and stated to them that he did not, intend to review all the evidence in detail bearing upon the question, but left the whole of it to their consideration. But he added that, as the testimony of the plaintiffs and the defendants was in direct contradiction, the jury in this conflict of evidence would do well to examine carefully the several instruments which had been produced as having been executed at said alleged settlement, and to consider which theory was most consistent with them. This seems to us to have been a very pertinent and reasonable suggestion, since what was written remained permanent and unchanged, while the recollection of the witnesses on one side or the other might have failed, and have been the occasion of numerous though unintentional errors in their statements. No objection was intimated by the counsel for the plaintiffs to this suggestion of the court, when it was made, or until after the rendition of the verdict. It was then for the first time objected that this monition to the jury should not have been given to them without accompanying it with the special instruction that " they should first be satisfied that said Stedman was authorized to execute the instrument signed by him." If this was deemed material by the plaintiffs, the attention of the court should have been called to it in season to enable the presiding judge to offer the appropriate or necessary explanations. But as it is obvious that the agency of Stedman was one of the essential facts, upon proof of which the alleged settlement was to be established, and as it was early developed in the testimony of Goodrich, and must necessarily have been the subject of inquiry and consideration, if there was really any doubt or controversy concerning it, there does not appear to have been any necessity or occasion for calling the attention of the jury to the

evidence upon that question when they were advised to compare the contents of the written documents with the oral testimony in the case.

4. The jury, having returned a verdict for the defendants, stated, upon inquiry by the court, that they found that a settlement had been made as claimed by the defendants. Thereupon the counsel for the plaintiffs requested the court to inquire of them whether they found that the said seven bales were included in the settlement; but the court declined to do so. There was no occasion for such an inquiry. The verdict covered the whole issue, and was a final and conclusive determination of all questions of fact submitted to them. It was within the discretion of the court whether they should be inquired of as to their finding upon any particular question which had arisen in the course of the trial; and the exercise of such discretion is not subject to exception, where it does not involve a violation of any rule of law or of established practice. In this case it clearly did not.

The several exceptions of the plaintiffs must therefore be overruled, and judgment entered on the verdict.